WILLIAMS *et al.*

*v.*

TOMLIN *et al.*

(*Supreme Court of Appeals of Virginia, Jan. 20, 1898.*)

[28 S. E. Rep. 883.]

**Res Judicata—Case at Bar.**

A former adjudication by a court of competent jurisdiction, in 1810, wherein the question of the right of the ancestor of plaintiff in the suit, his heirs and tenants, to free ferriage across a stream, and the construction of the deed on which the right was based, was decided in his favor, is binding and conclusive in a subsequent suit involving substantially the same question, between those in privity with the parties to the former suit.

**Same—Jurisdiction.**

A doubt intimated by the chancellor as to his right to entertain jurisdiction of the suit will not affect his judgment, when he did exercise jurisdiction.

Appeal from circuit court, Hanover county.

Bill by Robert W. Tomlin and others against L. E. Williams and another, to compel defendants to transport themselves, their heirs, tenants, etc., over their ferry free of charge. From a decree for plaintiffs, defendants appeal. Affirmed.

*Geo. P. Haw,* for appellants.

*Robert W. Tomlin,* for appellees.

RIELY, J., delivered the opinion of the court.

The appellees, who were the plaintiffs in the court below,

asserted by their bill the right to transportation, free of charge, for themselves, their heirs, tenants, servants, or employees, families, property, and all things appertaining unto them, to and fro over the ferry of L. E. Williams and M. E. Williams, appellants, who were defendants in the court below, as their needs or convenience might require ; and the circuit court adjudged and decreed that they were entitled to this right.

Nicholas Syme, who was the owner of the land in King William county, whence the ferry was established across the Pamunkey river, to Hanover county, sold and conveyed the said land on January 7, 1786, to Walker Tomlin, whose wife, Sarah Tomlin, owned the adjoining tract of land, upon which was the present landing place of the ferry, and through which the road to the landing then and for a number of years had passed.

Contemporaneous with the conveyance of the land from Syme to Tomlin, the latter and his wife conveyed to Syme, by way of covenant, to stand seised to his use and behoof, so much of the said two tracts of land as the road to the ferry ran upon, and so much thereof as was occupied as a landing, extending 20 yards down the Pamunkey river, as a passage and landing place to the ferry. They also covenanted not to consent to the building of any bridge or the establishment of any ferry from either of the said two tracts of land, and granted to Syme the right, in times of inundation, to land his boat and passengers on any part of the said lands, so that he did not thereby injure the growing crops. They further covenanted not to claim or demand any right or emolument of the ferry in consequence of their being proprietors of the said two tracts of land, but, in consideration of the said conveyance and covenants, they reserved "a passage, ferry free, in all time coming, to them, the said Walker Tomlin and Sarah, his wife, their heirs or assigns, and their and each of their families, who shall be holders and proprietors of the said two several tracts of land."

The deed was made for a valuable consideration, and consti-

tuted a valid and forever binding contract between the owners of the said land and the owners of the ferry, and all who claim through or under them.

Under its provisions, the right of passage back and forth across the ferry, free of ferriage, was exercised first by Walker Tomlin, and afterwards by John Walker Tomlin, his son and heir, and assented to by Nicholas Syme, from 1786 until the year 1810. In the latter year, John Walker Tomlin, desiring to convey promptly to market his crop of wheat, hired wagons in the city of Richmond to enable him to do so. Free passage for them was refused by Syme, upon the ground that Tomlin was not entitled to pass over the ferry hired wagons free of toll, and that he had forfeited the right to cross free himself, in consequence of having transferred his residence from the said lands in King William county to his farm, Clifton, in Hanover county.

Suit was thereupon instituted by Tomlin against Syme to the superior court of chancery for the Richmond district to enjoin and restrain him from collecting ferriage on the hired wagons, and the question arose in that suit as to the construction of the said deed, and the right of Tomlin to free passage over the ferry, according to his contention.

Parol evidence was admitted to show the construction that had been put upon the deed by the parties, and their understanding of its meaning. It appeared from the evidence, as stated by Chancellor Taylor in his opinion, that from 1786 to 1810, when the hired wagons were stopped, a term of twenty-four years, "the overseers, servants, wagons, carts, and teams, nay, all things, first of the father, and then of the son, the plaintiff, were allowed to cross free from any charge." The chancellor, holding that the parties had the right to give that construction to their own deed which accorded with their own understanding of it, and it having been proved that the Tomlins had claimed and Syme had allowed the right of passage, ferriage

free, to the extent above stated, decided that the plaintiff, Tomlin, was entitled to a free passage for the hired wagons.

As to the objection that the removal by the plaintiff of his residence from the lands in King William county to Hanover county increased the duty of the ferryman, the chancellor further said : "Although this is true, yet Mr. Tomlin's right to a free use of the ferry does not depend upon his residence at this or that place, but upon his being the holder and proprietor of the two several tracts of land referred to by the deed. He may, then, live where he pleases, and, so long as he continues to be the holder and proprietor of the said lands, his right, in all things pertaining to him, to cross the ferry, exempt from ferriage, must remain as exercised by his father, in all time to come."

It was thereupon adjudged, ordered, and decreed that "the injunction awarded the plaintiff on the 5th day of September, 1810, stand and be perpetual against any obstruction on the part of the said defendants to a free passage over said ferry for the plaintiff, and all things appertaining to him, so long as he, or his heirs or assigns, may be holders and proprietors of the said two several tracts of land, as referred to by the deed aforesaid."

Under the deed of 1786, as thus interpreted by the court and the decree made in that suit, the plaintiffs were entitled to a free passage across the ferry for their tenant, his teams, wagons, hired hands, laborers, and property, although he resided at Clifton, in Hanover county, just as was John Walker Tomlin entitled to a free passage for his hired wagons while residing at the same place.

The decree in Walker against Syme et al. was entered on September 7, 1811. From that time down to 1893, when the ferryman of L. E. Williams and M. A. Williams refused, by their order, to transport free the tenant of the plaintiff, his team, or anything belonging to him, for upwards of 80 years, the plaintiffs and their ancestors, as holders and proprietors of

the said lands, had exercised, in accordance with the said decree and the construction placed upon the said deed by the chancellor, the right of free passage for themselves, their servants, families, slaves, tenants, property, and all things pertaining to them, without disturbance or question by the defendants or those through whom they claim.

The immediate ancestor of the plaintiffs, from whom they inherited the Eocene farm, died in 1861, and they had not since resided thereon, but rented it out to successive tenants. For 12 years previous to this controversy they had rented it to H. C. Alexander, who resided at Clifton, in Hanover county, as did John Walker Tomlin, in 1810, when the suit between him and Nicholas Syme was instituted and decided ; and the said Alexander, during his tenancy, had cultivated the Eocene farm of the plaintiffs, and, though residing in Hanover county, had enjoyed, in right of the plaintiffs, free passage, back and forth over the ferry, for himself, his hired hands and laborers, teams, wagons, and property, as did the prior owners and tenants of the said lands in King William county.

We are of opinion that under the decree aforesaid, and the construction given in the said suit by the chancellor to the deed of 1786, which was in accordance with the interpretation put upon it by the original parties themselves, as shown by their conduct following its execution, and for a long period of time, the plaintiffs are entitled, so long as they may be holders and proprietors of the Eocene farm, to a free passage over the said ferry, as set forth in the decree of the circuit court.

It was argued in behalf of the appellants that the decree in the case of Tomlin against Syme et al. was not binding on them, because of the doubt intimated by the chancellor as to the right of a court of equity to entertain the suit. It was merely the suggestion by him of a doubt as to the jurisdiction of a court of equity, but, however that may be, the fact remains that he exercised jurisdiction, construed the deed of 1786, and

settled the rights of the parties thereto. The decision and decree made in that case is therefore binding, not only on the original parties to the deed and to the said suit, but also on all subsequent owners of the said lands and ferry in privity with them. Lemmon v. Herbert, 92 Va. 653, 24 S. E. 249.

We find no error in the decree of the circuit court, and the same must be affirmed.

CARDWELL and HARRISON, JJ., absent.